**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PERCY HUTTON,** | : | Case No. 1:05-CV-2391 |
| | : | |
| Petitioner, | : | |
| | : | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | : | |
| | : | |
| **BETTY MITCHELL, Warden,** | : | **ORDER** |
| | : | |
| Respondent. | : | |

This matter is before the Court upon Petitioner Percy Hutton's ("Hutton") Second Motion for Discovery, (ECF DKT # 36). Betty Mitchell, the Respondent ("Respondent"), filed opposition to the Motion, (ECF DKT # 37). Hutton did not file a reply brief. For the following reasons, the motion for discovery will be granted in part and denied in part.

Hutton filed a First Motion for Discovery, (ECF DKT # 23), and a Memorandum in Support of the Motion (ECF DKT # 24), on May 8, 2006. Thereafter, the Court issued an Order

denying Hutton's First Motion for Discovery until pending litigation in the Ohio courts on the identical issues that were the subject of the discovery motion had concluded, (ECF DKT # 27). In that same Order, the Court required Hutton to file periodic status reports regarding his state court proceedings. On April 7, 2008, Hutton filed a status report indicating the Ohio Supreme Court refused to accept jurisdiction on Hutton's second petition for post-conviction relief, thereby concluding his state court litigation. He then filed the instant Second Motion for Discovery on May 19, 2008.

## I. Pertinent Factual Background

In mid-September 1985, Hutton confronted Samuel Simmons, Jr. ("Simmons") about stealing Hutton's sewing machine which contained $750. Hutton asserted he had seen Simmons's friend, Derek Mitchell ("Mitchell"), attempting to sell the machine. In a second meeting some days later, Hutton accused Mitchell of stealing some tires from his backyard and demanded the return of the sewing machine. According to Simmons's trial testimony, Hutton threatened to kill Mitchell if he discovered Mitchell was involved with the theft of the sewing machine.

After requesting Mitchell and Simmons enter his vehicle, Hutton and co-defendant Bruce Laster ("Laster") parked the car next to a brown El Dorado. Hutton opened the hood of the vehicle and asked Simmons to start it. He then walked back to Simmons, who was sitting in the driver's seat, and shot him twice in the head. Hutton later told Mitchell that someone had shot Simmons and drove him to a hospital. Hutton, Mitchell, and Laster then went to Mitchell's apartment and awoke his girlfriend, Eileen Sweeney ("Sweeney"). They took her to the hospital and left her there, instructing her to visit Simmons. Simmons then informed Sweeney that it was

Hutton who shot him. He told her to return to the car and warn Mitchell. When Sweeney returned to the point where Hutton had left her, she discovered the vehicle already had left the premises.

Hutton and Laster later returned to the hospital. Hutton told Sweeney Mitchell was at his apartment and offered to take her home. She entered the vehicle but, instead of taking her to Mitchell's apartment, he drove to a park and raped her. He thereafter advised Sweeney to "forget about" Mitchell because he "wasn't coming back." *State v. Hutton*, 53 Ohio St.3d 36, 38 (1990).

Upon recovering Mitchell's body several days later, Cleveland police collected two bullets, that ballistics experts later identified as fired from a .22 caliber long rifle or handgun. The bullets found in Mitchell's body were similar to those taken from Simmons's head, but experts could not determine whether they were fired from the same weapon. *Id*.

## II. Applicable Law

A habeas petitioner is entitled to discovery if "the judge in the exercise of his," or her, "discretion and for good cause shown grants leave to do so, but not otherwise." R. Governing Section 2254 Cases 6(a). The "good cause" standard set forth in Rule 6 restrains a habeas petitioner from unbridled entitlement to discovery. "At the very least, it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery [afforded in] ordinary civil litigation. . . ." *Harris v. Nelson*, 394 U.S. 286, 295 (1969)(citation omitted); *see also Lynott v. Story*, 929 F.2d 228 (6th Cir.1991)(following *Harris*). To demonstrate good cause, a habeas petitioner must state a specific allegation that, if fully developed, would entitle the petitioner to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). A habeas court need

not grant a petitioner's discovery requests if they are tantamount to "a fishing expedition masquerading as discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

### III. Discovery Requests

#### A. Procedural Default/Waiver

Before addressing Hutton's individual discovery requests, the Court must address two timeliness issues the Respondent raised in her opposition brief. First, the Respondent contends the Eighth District Court of Appeals held Hutton's second state post-conviction petition was untimely filed. Accordingly, it found the post-conviction court was without jurisdiction to review Hutton's second post-conviction petition and it did not conduct a merit review of his claims. *State v. Hutton*, No. 80763, 2007 WL 2955663, at *3 (Ohio Ct. App. Oct. 11, 2007). Because Hutton's second post-conviction petition raises the identical issues Hutton raises in his federal habeas petition, and which are the subject of the instant discovery motion, the Respondent asserts the Eighth District Court's holding of procedural default requires this Court to deny Hutton's discovery requests on the grounds the claims they would factually develop cannot lead to federal habeas relief, (ECF DKT # 37, at 3).

The Court is reluctant to make a broad finding regarding any claims the Respondent asserts are procedurally defaulted and thus foreclosed from discovery. Moreover, in writing its capital habeas corpus opinions, the Court reviews the merits of each claim for purposes of judicial economy and appellate review regardless of whether the claim is procedurally defaulted. Thus, any discovery related to a potentially defaulted claim would not be superfluous. Moreover, as the Respondent concedes, (ECF DKT # 37, at 3), if Hutton can demonstrate the necessary cause and prejudice to excuse the default, any discovery on a procedurally defaulted

-4-

claim ultimately could lead to habeas relief.

Other judges on this Court have reached a similar conclusion. *See Lewis v. Mitchell*, No. 1:99-CV-2522 (N.D. Ohio Jan. 26, 2005)(Memorandum and Order Granting in Part and Denying in Part Discovery Motion)(Wells, J.); *Lott v. Coyle*, No. 1:95-CV-2642 (N.D. Ohio Mar. 18, 1998)(Memorandum and Order Granting in Part and Denying in Part Discovery Motion)(O'Malley, J.). Thus, while the Court will consider the Respondent's allegations of procedural default, it will not impose an outright bar on discovery on that basis.

The Respondent also asserts Hutton's habeas petition is untimely and subject to dismissal under 28 U.S.C. § 2244(d). The Court addresses that issue in a separate Order, concluding Hutton's petition may be untimely pursuant to the statute but he is, nonetheless, entitled to a merit review of his petition under the doctrine of equitable tolling.

## B. Individual Discovery Requests

Hutton requests extensive discovery in his motion. He asks the Court to permit him to obtain records and documents, forensic, trace, and physical evidence, as well as statements and reports from various state agencies. He also requests the depositions of numerous individuals involved in his and his co-defendant's investigation, prosecution, and incarceration. The Court reviews each request in the order in which Hutton raised it in the motion.

### 1. Records and Documents

#### a. Ohio Department of Rehabilitation

Hutton requests any and all of Simmons's documents and records, including records regarding his current incarceration in the Richland Correctional Institution. Hutton fails to explain in his Memorandum In Support of the Motion, (ECF Doc. # 24), what relevance these

documents have to the instant action or how they support specific claims in the petition. The Court therefore finds that Hutton has failed to set forth sufficient "good cause" to obtain this discovery.

### b. Ohio Bureau of Criminal Identification and Investigation ("BCI")

Hutton next asks the Court for permission to obtain BCI records and reports pertaining to his trial. He explains, while State experts testified during trial that bullet fragments found in both Simmons's and Mitchell's body likely were fired from the same .22 caliber weapon, the experts could not definitively so conclude. He would now like to review these reports and documents in an attempt to establish the time of Mitchell's death in hopes of discrediting the State's theory of how Mitchell's murder occurred. He argues these records could serve to bolster his actual innocence claim and claim that the prosecution withheld exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Court finds Hutton has established "good cause" to obtain this discovery. As Hutton suggests, any evidence tending to demonstrate the shots fired at Simmons and Mitchell were from different weapons or that Mitchell's time of death did not occur when the State proffered arguably could lead to habeas relief. Accordingly, the Court grants this discovery request.

### c. Cuyahoga County Coroner's Office

Hutton requests the Court allow him access to all Coroner's raw notes, files, and documents pertaining to Mitchell's death. Although he concedes that he already has obtained this file, he argues that there may be additional documents based on the "hit and miss" methods of his trial attorney, (ECF DKT # 24, at 7). The Court finds this request does not satisfy the "good cause" requirement. In fact, Hutton's mere suspicion that additional documents exist

-6-

renders this request "a fishing expedition masquerading as discovery," which the Sixth Circuit has explicitly rejected. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

### d. Cuyahoga County Prosecutor Files

Hutton asks the Court for permission to obtain the complete files regarding the Mitchell murder as well as the complete files regarding the Sweeney rape. Although he cites to opinions by both this Court and the Sixth Circuit finding misconduct in the Cuyahoga County Prosecutor's Office, the Respondent aptly observes the prosecutor in both cases cited was not part of the prosecution team during Hutton's trial. Thus, any innuendo that misconduct occurred in this case simply because a different prosecutor acted improperly is not well-taken.

Hutton does assert the prosecution in his case failed to produce a statement from Samuel Simmons, Sr., Simmons's father, indicating individuals unknown to him were looking for his son on the night of the murder and stated to him Simmons could "run but not hide," (ECF DKT # 10-2, at 19). As the Respondent observes, however, Simmons, Sr. testified for the defense during trial and was thus available to the defense. Thus, it does not appear necessary for Hutton to obtain the prosecution's file on this basis.

Similarly, Hutton does not demonstrate a nexus between his request for Sweeney's rape file and the claims he raises in the petition. Because he cannot demonstrate how obtaining these files could lead to federal habeas relief, the Court finds no "good cause" exists and denies these discovery requests.

### e. Cleveland Police Department

Hutton makes several requests for materials from the Cleveland Police Department. He wishes to obtain the entire file pertaining to the Mitchell murder investigation as well as photos,

videos, and audio recordings from several investigating officers. He asks the Court for permission to review the files regarding the deaths of Henry Grant and Elizabeth Scales, whose killers Hutton asserts he aided police in apprehending. Finally, he requests any files pertaining to Simmons's alleged arrest for rape around the time of his trial.

The Court finds Hutton sets forth insufficient "good cause" to obtain this discovery. First, Hutton does not explain why he believes there is evidence contained in the Mitchell murder file that supports his *Brady* or actual innocence claims. Moreover, he does not explain why he believes the specific Cleveland Police Department Officers he names have information that could lead to habeas relief. While a *Brady* claim, by definition, must involve evidence withheld from the defense, rendering a habeas petitioner unaware of its existence, a petitioner must provide some pretext about why he or she believes the State withheld exculpatory evidence. Because Hutton provides no such allegation, the Court must deny this request.

Finally, Hutton asks the Court for permission to obtain police files on a rape Simmons committed, but for which he was not charged, that occurred prior to or during the time of his trial. He maintains Simmons may have received favorable treatment for these charges in exchange for his testimony. While Hutton certainly provides the detail in this request that is lacking in the previous ones, he does not explain to the Court how he obtained this information or why he believes it bears indicia of credibility. Without offering some account of where he received this information and why the Court should find it to be credible, it is nothing more than allegation. The Court denies Hutton's request for Simmons's police files.

### f. Court Records

Hutton asks the Court for the state court records from the Sweeney rape trial, including

trial transcripts. He does not explain, however, why these files are relevant to the resolution of his habeas claims. Because this was a public proceeding that presumably involved Hutton, the Court surmises that Hutton is in a good position to explain the necessity of these documents and their assistance to the Court in deciding his habeas claims. This failure to explain his request renders it insufficient to establish "good cause."

### g. St. Luke's Hospital Records

Hutton wishes to obtain Simmons's hospital records related to his shooting, including any toxicology reports. He also requests the Court grant him permission to acquire security records from the dates Simmons was admitted. While these requests presumably relate to Hutton's *Brady* and/or actual innocence claims raised in the petition, Hutton does not elaborate in either the motion or memorandum why he believes these materials will advance these claims. Without some basis to assert the necessity of these materials, Hutton's requests do not provide the Court with "good cause." The Court denies Hutton's request to obtain these materials.

### 2. Forensic, Trace, and Physical Evidence/Statements and Reports

Hutton requests the Court grant him access to all evidence recovered from Mitchell's body, items located at or near the crime scene, as well as audio and/or video recordings depicting the crime scene. He also wishes to obtain interrogation statements and reports from the Cleveland Police Department, BCI, and the Cuyahoga County Prosecutor's Office made by, or prepared in regards to, co-defendant Laster. As with many of his previous requests, Hutton does not explain why he believes information contained in these materials would support his claims for relief. Accordingly, the Court must find no "good cause" exists to obtain these documents. The Court denies these discovery requests.

**3. Depositions**

Hutton asks for numerous depositions in his discovery motion. He first requests the opportunity to depose the trial prosecutors. Although Hutton asserts the necessity of these depositions to further his *Brady* claim, he does not explain what information this deposition might yield. Similarly, he asks to depose homicide Detective Robert Moore because Hutton may have assisted Moore in solving other homicides. While that may be the case, Hutton does not articulate why this information, if true, would further his habeas claims or entitle him to habeas relief. Because Hutton has not articulated "good cause" regarding these depositions, the Court denies these requests.

Hutton next asks to depose trial and appellate counsel, Merlin Hill and Robert Ingersoll, respectively. In his petition, Hutton alleges trial counsel was ineffective during the mitigation phase of trial for failing to obtain a litany of evidence that could have spared him the death penalty. Hutton requests the opportunity to depose trial counsel to ascertain why counsel failed to introduce this background evidence during the sentencing hearing. Although Hutton does not reveal in his motion whether he has attempted to contact his trial counsel prior to requesting a court order, the Court finds it is often beneficial, when resolving an ineffective assistance of counsel claim, to review the reflections of trial counsel regarding trial strategy. Thus, while the preferred practice may be to contact trial counsel without a formal request to the Court, the Court finds "good cause" exists to depose trial counsel.[1]

---

[1] In his motion, Hutton concludes that if the Court finds his petition to be timely, it is unnecessary to depose Ingersoll. Because the Court, in a separate Order, holds Hutton's petition is subject to equitable tolling and therefore entitled to a review on the merits, the Court finds this deposition unnecessary.

Hutton asks to depose several prison inmates, including but not limited to individuals involved in his trial.  He requests permission to depose Simmons and Laster.  Hutton does not explain why it is necessary to depose Simmons, particularly in light of the fact that defense counsel had the opportunity to cross-examine him during trial.  This request is therefore denied.  Although Hutton informs the Court about a statement Laster made to his investigator during state post-conviction proceedings that tends to support his actual innocence, Hutton does not explain why it is necessary to question Laster again when this statement is part of the current habeas record.  The Court finds no "good cause" to do so and denies this request.

Hutton also wishes to depose Don Wesner and James Edinburgh, two fellow inmates of Simmons who allegedly spoke with Simmons regarding the Mitchell murder.  Hutton does not explain to the Court how he learned the names of these individuals or why he came to believe they have information helpful to him.  Without providing this essential information, Hutton's allegations are merely suspicions and short of meeting the "good cause" requirement.  The request to depose these individuals is denied.

Hutton next moves the Court for permission to depose a list of seven other proposed individuals.  He does not explain why he believes these individuals possess useful information to him or, in some cases, does not even explain their nexus to his case.  These requests are thus too attenuated for the Court to find they articulate "good cause."

### 4. Additional Documents

Finally, Hutton asks the Court permission to obtain all documents related to his matriculation and/or attendance at the Lincoln Technical Institute in Indianapolis, Indiana.  Because these are Hutton's own school records, the Court finds it is unnecessary for Hutton to

procure a court order to obtain them.  Accordingly, this discovery request is denied.

### IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Hutton's motion for discovery, (ECF DKT # 36).  Specifically, the Court grants Hutton's motion to obtain BCI records and reports pertaining to his trial.  The Court also permits Hutton to depose trial counsel, Merlin Hill.  All other discovery requests fail to set forth "good cause" and are therefore denied.

**IT IS SO ORDERED.**

S/Christopher A. Boyko<br>
**CHRISTOPHER A. BOYKO**<br>
**UNITED STATES DISTRICT JUDGE**

September 16, 2008