UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PERCY HUTTON, | : | Case No. 1:05-CV-2391 |
| | : | |
| Petitioner, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| | : | |
| BETTY MITCHELL, Warden, | : | **ORDER** |
| | : | |
| Respondent. | : | |

This matter is before the Court upon Petitioner Percy Hutton's ("Hutton") Third Motion for Discovery ("Third Motion"). (ECF DKT # 43.) Betty Mitchell, the Respondent (Respondent"), opposed the Motion. (ECF DKT # 44.) Hutton did not file a reply brief. For the following reasons, the Third Motion will be granted in part and denied in part.

Hutton filed a First Motion for Discovery, (ECF DKT # 23), and a Memorandum in Support of the Motion (ECF DKT # 24), on May 8, 2006. Thereafter, the Court issued an Order denying Hutton's First Motion for Discovery until pending litigation in the Ohio courts on the identical issues that were the subject of the discovery motion had concluded. (ECF DKT # 27.) Hutton then filed a Second Motion for Discovery ("Second Motion") on May 19, 2008, which the Court granted in part and denied in part. (ECF DKT #39.) Hutton's Third Motion, now decisional before the Court, is fundamentally a motion to reconsider the Second Motion.

Because of the similarities between the Second and Third Motions for Discovery, the

Court repeats the relevant facts from its September 16, 2008 Discovery Order granting in part and denying in part the Second Motion:

### I. Pertinent Factual Background

In mid-September 1985, Hutton confronted Samuel Simmons, Jr. ("Simmons") about stealing Hutton's sewing machine which contained $750. Hutton asserted he had seen Simmons's friend, Derek Mitchell ("Mitchell"), attempting to sell the machine. In a second meeting some days later, Hutton accused Mitchell of stealing some tires from his backyard and demanded the return of the sewing machine. According to Simmons's trial testimony, Hutton threatened to kill Mitchell if he discovered Mitchell was involved with the theft of the sewing machine.

After requesting Mitchell and Simmons enter his vehicle, Hutton and co-defendant Bruce Laster ("Laster") parked the car next to a brown El Dorado. Hutton opened the hood of the vehicle and asked Simmons to start it. He then walked back to Simmons, who was sitting in the driver's seat, and shot him twice in the head. Hutton later told Mitchell that someone had shot Simmons and drove him to a hospital. Hutton, Mitchell, and Laster then went to Mitchell's apartment and awoke Mitchell's girlfriend, Eileen Sweeney ("Sweeney"). They took her to the hospital and left her there, instructing her to visit Simmons. Simmons then informed Sweeney it was Hutton who shot him. He told her to return to the car and warn Mitchell. When Sweeney returned to the point where Hutton had left her, she discovered the vehicle already had left the premises.

Hutton and Laster later returned to the hospital.  Hutton told Sweeney Mitchell was at his apartment and offered to take her home.  She entered the vehicle but, instead of taking her to Mitchell's apartment, he drove to a park and raped her.  He thereafter advised Sweeney to "forget about" Mitchell because he "wasn't coming back."  *State v. Hutton*, 53 Ohio St.3d 36, 38 (1990).

Upon recovering Mitchell's body several days later, Cleveland police collected two bullets ballistics experts later identified as fired from a .22 caliber long rifle or handgun.  The bullets found in Mitchell's body were similar to those taken from Simmons's head, but experts could not determine whether they were fired from the same weapon.  *Id*.

(ECF DKT # 39, 2-3.)

## II. Applicable Law

A district court has the discretion to permit discovery in a habeas proceeding under Rule 6(a) of Rules Governing Section 2254 Proceedings for the United States District Courts, which requires that the petitioner demonstrate "good cause" prior to permitting discovery.  The Sixth Circuit has found discovery appropriate, "'provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.'"  *Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) (quoting *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001)).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact."  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (brackets and internal quotation marks omitted).  A habeas court need not grant a petitioner's discovery

requests if they are tantamount to "a fishing expedition masquerading as discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

### III. Discovery Requests

### A. Modification of Previously Granted Discovery

In the Second Motion, Hutton requested, and the Court granted, permission to obtain records and reports regarding bullet fragments found in Simmons's and Mitchell's bodies, which experts could not conclude definitively came from the same .22 caliber weapon. Hutton presumed that these materials were lodged with the Ohio Bureau of Criminal Identification and Investigation ("BCI").

Subsequent to the Court's granting this request, the Respondent filed a notice that BCI was not the entity that conducted testing in Hutton's case. Hutton therefore surmises that the records and reports must be located at the Cleveland Police Department Scientific Investigation Unit ("SIU"). He asks the Court's to grant him permission to obtain from the SIU lab the same discovery it previously permitted him to obtain from the BCI.

The Court grants Hutton's request, finding good cause exists for this discovery on the grounds set forth in its September 16, 2008 Discovery Order. (ECF DKT # 39, at 6.)

### B. Reconsideration of Previous Discovery Requests

### 1. Ohio Department of Rehabilitation Records

Hutton requests any and all of Simmons's documents and records from the Ohio Department of Rehabilitation ("ODR"), including records regarding his current incarceration in the Richland Correctional Institution. The Court previously denied this request because Hutton failed to explain why these records were relevant to deciding the claims raised in his petition.

In the Third Motion, Hutton informs the Court that Simmons was the key prosecution witness during trial. The attempted murder charge involving Simmons also was the basis for one of the capital specifications in the indictment. During Hutton's trial, no evidence came to light revealing Simmons made a deal with the prosecution in exchange for his testimony. Because of Simmons's numerous incarcerations before and after his testimony, Hutton seeks the above records to determine whether the prosecution offered Simmons any inducements to testify against him.

The Court finds Hutton has set forth enough "good cause" to obtain this discovery. While this request is somewhat theoretical, the fact that Simmons testified against Hutton, was the prosecution's principal witness, and that Simmons had an extensive criminal record prior to his testimony is adequate to support Hutton's suspicions that the prosecution may have offered him some reward in exchange for his testimony. In so holding, the Court does not find that a habeas petitioner is entitled to discovery, as a matter of course, in every instance in which a State witness has a criminal record. Rather, the Court finds the unique circumstances in this case, where evidence presented during trial suggests that Hutton actually aided Simmons once he was shot, raise an inference that there may be factual information regarding Simmons's criminal background that could support a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). The Court therefore grants Hutton's request for the ODR records.

## 2. Cuyahoga County Coroner's Files

Hutton asks the Court to reconsider its denial of his request for the Coroner's raw notes, files, and documents pertaining to Mitchell's death. He conceded in the Second Motion that he already has obtained this file, but speculated that the Coroner failed to provide him with the

entire file. In its previous Order denying this request, the Court found Hutton's mere suspicion that additional documents exist was insufficient to demonstrate "good cause." Hutton supplies no further explanation in the Third Motion as to why he believes additional materials are in existence. The Court therefore denies this discovery request.

### 3. Cleveland Police Department Files

Hutton renews his requests for materials from the Cleveland Police Department. He wishes to obtain the entire file pertaining to the Mitchell murder investigation as well as photos, videos, and audio recordings from several investigating officers. He asks the Court for permission to review the files regarding the deaths of Henry Grant and Elizabeth Scales, whose killers Hutton asserts he aided police in apprehending. Finally, he requests any files pertaining to Simmons's alleged arrest for rape around the time of his trial.

The Court denied Hutton's requests to review the Grant and Scales files in its September 16, 2008 Order, finding Hutton failed to explain why he believes obtaining them would warrant habeas relief. (ECF DKT # 39, at 8.) Hutton explains in the Third Motion that "[t]his information, minimally, is powerful mitigation as to why death would not be appropriate." (ECF DKT #43, at 5.)

While Hutton attempts some explanation for this request in the Third Motion, he does not explain in what claim or claims in the petition the Court would take this information into account. Typically, any re-weighing of a habeas petitioner's sentence must be performed by a state court. *Wilson v. Mitchell*, 498 F.3d 491, 506 (6th Cir. 2007).[1] The Court therefore finds no

---

[1] If Hutton intended to use this information to support his *Brady* or ineffective assistance of counsel claims, it is insufficient to meet the materiality and prejudice standards required to grant habeas relief. Similarly, this admittedly

"good cause" to grant this discovery request.

The Court initially denied Hutton's request for Simmons's police files, finding that Hutton has not indicated why he believes Simmons received favorable treatment in exchange for his testimony.  Although Hutton supplies no significant new information in the Third Motion regarding why he believes this is the case, the Court grants this request for the reasons stated in the identical grounds that it grants Hutton's request to review Simmons's ODR files.

### 4. Sweeney Rape Court Records

Hutton next asks the Court to reconsider its decision to deny him access to the Sweeney rape court records.  Previously, the Court held Hutton did not sufficiently explain this request to meet the "good cause" requirement.  Hutton now informs the Court that he wishes to compare prosecutorial statements in the rape trial with those in the homicide trial to determine if the prosecutor said anything improper, particularly because the Ohio Supreme Court found on direct appeal the introduction of the rape was improper.  *State v. Hutton*, 53 Ohio St.3d 36, 40 (1990). While the Third Motion adequately explains the basis for Hutton's request, the Court finds it is too speculative to constitute "good cause" for this discovery.  The Court denies this request.

### 5. St. Luke's Hospital Records

In the Third Motion, Hutton supplies the basis for the request for the St. Luke's Hospital records.  He explains that, while Simmons was conscious during the treatment of his gunshot wound, he did not appear to inform any hospital personnel with the name of his assailant. Hutton would like to review these records to be certain that no such conversation occurred to

---

"minimal" information would not serve to meet the significant requirements to prove Hutton is actually innocent of the death penalty.

support his ineffective assistance of counsel claim for failing to raise this fact during Simmons's cross-examination. The Court finds, in light of this explanation, sufficient "good cause" now exists to grant this request.

### 6. Forensic, Trace, and Physical Evidence

As with the previous request, the Court initially denied Hutton's request for trace evidence found at the murder scene because Hutton did not reveal the basis for it. In the Third Motion, Hutton informs the Court he wishes to obtain this evidence because experts who testified during trial could not match the bullets from the Mitchell and Simmons shootings. It was Sweeney who provided the nexus between the two shootings by both describing Hutton's weapon and stating that Hutton had told her Mitchell "wasn't coming back." *Id.* at 38. Because the jury found her not to be credible in the subsequent rape trial, Hutton maintains that she may not have been truthful in the Mitchell homicide trial, particularly because she was involved with Mitchell prior to his murder.

Although Hutton now has supplied the Court with a basis for this discovery request, the Court finds that it is too speculative to constitute "good cause." Rather than supply the Court with some factual pretext for his belief that Sweeney perjured herself, Hutton merely speculates that she may have lied to obtain revenge for Mitchell's murder. This discovery request is denied.

### 7. Laster Statements

Finally, Hutton seeks any statements Laster made to police. Subsequent to Hutton's trial, investigator Tom Pavlish interviewed Laster, who made several statements Hutton claims exonerate him. This interview is part of the current habeas record. *Return*, Apx. Vol. 17, at 29. Hutton does not explain, however, why it is necessary to obtain police files regarding these

statements when Pavlish questioned Laster regarding police statements during the interview. *Id.* at 56-7. Because this information already is part of the habeas record, the Court finds no "good cause" to obtain additional discovery for it. Accordingly, this request is denied.

### IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Hutton's Third Motion for Discovery. (ECF DKT # 43.)  Specifically, the Court grants Hutton's motion to obtain records and reports from the Cleveland Police Department SUI.  Additionally, the Court grants Hutton's request to obtain ODR and Cleveland Police Department Files pertaining to Simmons's parole hearings and past criminal convictions.  Finally, the Court also permits Hutton to obtain the St. Luke's Hospital medical records regarding Simmons's gunshot wound treatment.  All other discovery requests fail to set forth "good cause" and are therefore denied.

**IT IS SO ORDERED.**

                                      **s/Christopher A. Boyko**
                                      **CHRISTOPHER A. BOYKO**
                                      **UNITED STATES DISTRICT JUDGE**

August 4, 2009